# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COOKEVILLE DIVISION

| | | |
|---|---|---|
| **ANTHONY J. PRICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:12-cv-00030** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 15.  Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed.  Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be GRANTED IN PART, and that this action be

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

REMANDED with instructions to further develop the record regarding Plaintiff's reported nausea and tremors.

## I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on January 28, 2008, alleging that he had been disabled since May 30, 2007, due to epilepsy.  Docket No. 11, Attachment ("TR"), TR 129, 136, 153.  Plaintiff's applications were denied both initially (TR 68, 69) and upon reconsideration (TR 72, 73).  Plaintiff subsequently requested (TR 90) and received (TR 99) a hearing.  Plaintiff's hearing was conducted on January 19, 2010, by Administrative Law Judge ("ALJ") Frank Letchworth.  TR 40.  Plaintiff and vocational expert ("VE"), J.D. Flynn, appeared and testified. *Id.*

On March 18, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 35.  Specifically, the ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2.    The claimant has not engaged in any substantial gainful activity since May 30, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: seizure disorder, major depression, recurrent without psychotic features, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is unable to operate a motor vehicle; unable to work at unprotected heights or around hazardous machinery; is unable to work in temperature extremes; is capable of performing simple and detailed instructions; and can have no more than frequent, casual contact with other individuals.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on April 22, 1985 and was 22 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 29-34.

On May 6, 2010, Plaintiff timely filed a request for review of the hearing decision.  TR

3

20.  On March 14, 2012, the Appeals Council issued a letter declining to review the case (TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner.   This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that: (1) the ALJ erred in evaluating Plaintiff's credibility; (2) the ALJ improperly addressed the issue of Plaintiff's side effects from his medication; and (3) the ALJ's mental residual functional capacity finding was not supported by the evaluation of the consultative examiner, Mr. Eugene Smith. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Plaintiff's Credibility**

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ failed to consider medical records from Dale Hollow Mental Health Center and Plaintiff's testimony regarding his complaints. Docket No. 16. Additionally, Plaintiff argues that the ALJ did not "take into effect the limited amount of engagement in the activities of driving, church volunteering and housework." *Id.* at 20. Specifically, Plaintiff argues that the ALJ did not consider his testimony, *inter alia*, that he self-suspended his driver's license in 2008; that his house was not the "cleanest in the world"; that he cleaned no more than one hour per day; that he volunteered only "a couple" hours per week for a youth group at his church; and that he would just sit on the pew when he went to church twice per week. *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's credibility because Plaintiff's allegations were inconsistent with the evidence as a whole. Docket No. 17. Specifically, Defendant argues that Plaintiff's complaints conflicted with his reported daily activities and with his testimony about his improvement with medication. *Id.* Defendant contends

that the record illustrates that: (1) Plaintiff's seizures were under control when Plaintiff was compliant with his medications; (2) Plaintiff had never sought treatment for severe headaches; (3) Plaintiff's contentions regarding nausea were "too vague" to mandate the ALJ's discussion of them; and (4) Plaintiff's tremors were not as severe as he alleged because his counsel did not ask questions about it at the hearing. *Id.* Defendant argues that, accordingly, the ALJ properly discounted Plaintiff's credibility. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective complaints:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the

following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

As an initial matter, although Plaintiff contends in this statement of error that the ALJ erroneously failed to consider his medical records from Dale Hollow Mental Health Center, Plaintiff's medical records from Dale Hollow Mental Health Center relate to the issues raised in next statement of error. Accordingly, the undersigned will discuss those records, and Plaintiff's contentions related thereto, in the second statement of error.

In the case at bar, the ALJ ultimately determined:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

TR 31.

As will be demonstrated in detail below, in reaching this determination, the ALJ

10

discussed the objective and testimonial evidence of record. *See* TR 31-33. The ALJ discussed

Plaintiff's medical records indicating improvement in his condition, particularly when Plaintiff

was compliant with taking his medications:

> When James P. Gregory, M.D. reviewed the medical evidence of
> record on April 15, 2008 he noted that the records reflected the
> claimant was seizure-free from July 2007 through November 2007.
> In January 2007 the claimant stopped taking medication and did
> not have a seizure until April 2007. He was started on Dilantin on
> July 24 and his level was 6.7. On December 26, 2007 he was
> admitted for epilepsy monitoring. On December 30, 2007 his
> medications were withheld and sleep deprived for four days and he
> had no seizures and had a normal EEG. During an exam completed
> on August 1, 2007 he was well developed and in no acute distress,
> he had free range of motion in all major joints, good pulses, his
> speech was fluent, his motor tone was within normal limits, he had
> 5/5 strength in all joints, reflexes 2+, and had no sensory loss.
>
> Dr. Gregory opined that the claimant appeared sporadic in
> compliance with his medications and has had periods of time when
> he was seizure free. [Claimants are expected to comply with
> prescribed treatment, especially when such compliance can
> improve their functioning. (20 CFR 404.1530/416.930)]
> Furthermore, the claimant had no exertional limitations but should
> avoid hazards and heights (Exhibit 7F).

TR 32, *referencing* TR 412-419 (bracketing original). Dr. Gregory's opinion is evidence which

the ALJ properly considered when making his credibility determination of Plaintiff.

When evaluating Plaintiff's credibility and alleged symptoms, the ALJ discussed

Plaintiff's testimony in part as follows:

> The record in this case has demonstrated that the claimant is an
> individual who can attend to his own personal needs. He testified
> that he has seizures, that he is on medication therapy and that his
> *last seizure was on January 1, 2009*. The claimant testified that he
> could dress and bathe himself. He testified that he cooks and does
> housework, as well as some grocery shopping. The claimant does
> drive, and he visits relatives and friends on an ongoing basis. He
> has hobbies such as watching TV. The claimant testified that he is

currently taking medications but offered no side effects from these medications such as sleepiness.

TR 31, *referencing*, TR 46-55, 61-62 (emphasis original).

Regarding Plaintiff's contention that the ALJ did not consider his complaint of headaches, the ALJ explicitly considered Plaintiff's reported headaches, stating:

> The claimant's credibility is further diminished by the scarcity/paucity of any evaluation or treatment of frequent, severe headaches described by the claimant in testimony. Mr. Price acknowledged that he had never been treated for such headaches. One would expect a person having the frequency and severity of headaches to have sought treatment thereof.

TR 32.

With regard to Plaintiff's contentions regarding his limited engagement in driving, church volunteering, and housework, the ALJ did address each of these activities in turn. TR 31-32. With respect to Plaintiff's contentions regarding driving, although the ALJ noted that Plaintiff drives,[3] the ALJ ultimately did not incorporate Plaintiff's driving into his residual

---

[3] Plaintiff testified as follows:

| | |
|---|---|
| Q | Okay.  Now, you didn't drive this morning but have you driven in the last year? |
| A | Very vaguely. |
| Q | Vaguely? |
| A | Yeah. |
| Q | What do you mean you've driven vaguely? |
| A | To church. |
| Q | When was the last time you drove to church? |
| A | *The Sunday before last.* |
| Q | How far was the drive? |
| A | About 10 minutes from my house. |

functional capacity finding. TR 31. Specifically, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: *he is unable to operate a motor vehicle*.

TR 31 (emphasis added).

Regarding Plaintiff's reported church volunteering and its relation to Plaintiff's claims of depression and anxiety,[4] the ALJ explicitly stated:

---

| | |
|---|---|
| Q | Has your license ever been suspended for a medical reason? |
| A | Not by the law but me and my family suspended it myself... |
| Q | You did a self-suspension? |
| A | Yes. |
| Q | And when did you self-suspend your license? |
| A | I believe it was in '08. . . |

TR 45-46 (emphasis added).

[4] Plaintiff testified as follows:

| | |
|---|---|
| Q | Are you engaged in any church activities? |
| A | Yes. |
| Q | What are they? |
| A | I volunteer for a couple hours a week for a youth or high school age, it's called the Edge, it's just for kids to go for a couple hours after school. |
| Q | Would this be considered a youth ministry? |
| A | Yes, that's what it is. |
| Q | Okay. You do this a couple of hours a week? |
| A | Yes. |

TR 54.

Mr. Price further endorses depression and social avoidance, yet he also acknowledges that he remains active as a church volunteer, without apparent social difficulty. Again, one would hardly expect a person with severe social phobia or panic attacks to engage in such activity. Moreover, the evidence fails to demonstrate significant symptom evaluation and/or treatment in 2008 and 2009.

TR 32.

As to Plaintiff's housework, the ALJ recounted Plaintiff's testimony,[5] noting:

The claimant testified that he could dress and bathe himself. He testified that he cooks and does housework, as well as some grocery shopping.

TR 31.

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 31-33, 46-55, 61-62, 412-419. It is clear from the ALJ's detailed articulated

---

[5] Plaintiff testified in part as follows:

| Q | Do you handle all of your basic personal needs by yourself? Do you take your own bathes [*sic*] or showers? |
|---|---|
| A | Yes, sir. |
| Q | Dress yourself, do you feed yourself? |
| A | Yeah. |

. . .

| Q | Do you cook these groceries by yourself at home? |
|---|---|
| A | Generally yeah. |
| Q | Do you do your own laundry? |
| A | Yes. |
| Q | Do you do your own housework? |
| A | As much as I do do [*sic*] for a 24-year-old. |

TR 52-53.

rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the objective and testimonial evidence of record, the ALJ determined that the objective medical evidence and Plaintiff's admitted daily activities were inconsistent with Plaintiff's allegedly disabling symptoms, and that, accordingly, Plaintiff's subjective complaints were not fully credible. TR 31-33, 46-55, 61-62, 412-19, 479-81.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the

15

decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. Evaluation of the Side Effects of Plaintiff's Medication

Plaintiff contends that the ALJ failed to discuss or properly consider the side effects of his medications on his ability to work. Docket No. 16. Specifically, Plaintiff argues that the ALJ incorrectly found that Plaintiff suffers no side effects from his medications, although the record and the testimony show that Plaintiff suffered from headaches, nausea, and tremors. *Id.*

Defendant responds that the ALJ properly discussed and considered Plaintiff's alleged medicinal side effects. Docket No. 17. Specifically, Defendant argues that the ALJ explicitly addressed Plaintiff's alleged headaches, and discounted the credibility of Plaintiff's subjective complaint of headaches because, *inter alia*, he had admittedly never sought treatment for them. *Id.* Defendant also argues that the ALJ's failure to address Plaintiff's allegations of nausea and tremors did not constitute reversible error because Plaintiff's testimony regarding these allegations was "too vague" and/or Plaintiff's counsel "saw no need to modify any of the ALJ's hypothetical questions to the VE to include" these impairments. *Id.* Accordingly, Defendant argues that Plaintiff's alleged nausea and tremors were not significant impairments. *Id.*

Plaintiff correctly asserts that the ALJ must consider the side effects of any medication he takes to alleviate pain or other symptoms. *See* SSR 96-7p.

With regard to Plaintiff's alleged side effects, the ALJ stated:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.
>
> . . .

16

> The claimant testified that he is currently taking medications but
> offered no side effects from these medications such as sleepiness.

TR 31.

Plaintiff's contention regarding the ALJ's consideration of his reported headaches has been discussed in the statement of error above, and will not be recounted here. Plaintiff's contention regarding his headaches is unavailing.

With regard to Plaintiff's contention that the ALJ failed to consider his reports of nausea and tremors, Plaintiff is correct that the ALJ's statement that "Plaintiff offered no side effects from these medications" is erroneous. Plaintiff's alleged nausea is referenced in Plaintiff's medical records and in his function report. TR 31, 200, 236, 496. Specifically, Plaintiff reported experiencing nausea since beginning Dilantin in approximately April 2007.[6] TR 236. Plaintiff's medical records from Dale Hollow Mental Health Center and his function report indicate that he reported experiencing nausea as late as July 28, 2008. TR 200, 496. Because there is no evidence suggesting that Plaintiff has experienced nausea since July 2008, no evidence regarding the frequency or severity of Plaintiff's nausea, and no evidence regarding whether Plaintiff was suffering from nausea at the time of the ALJ's decision, the undersigned cannot determine, based on the ALJ's statements regarding Plaintiff's alleged side effects, whether the ALJ considered Plaintiff's reported nausea and discounted it or failed to consider it. Accordingly, the undersigned recommends that this action be REMANDED for further development of the record regarding the issue of Plaintiff's alleged nausea.

With regard to Plaintiff's alleged tremors, Plaintiff's medical records substantiate his testimony that he "quite often" experiences tremors in his hands and feet. TR 59, 488, 492.

---

[6] Plaintiff's reported disability onset date is May 30, 2007. TR 153.

Specifically, Plaintiff's medical records from Dale Hollow Mental Health Center note that, on December 15, 2008, Plaintiff had "tremors which he attributes to seizure disorder," and that, on April 20, 2009, Plaintiff's "tremors persist." TR 488, 492. The undersigned cannot determine, based on the ALJ's statement regarding the absence of Plaintiff's alleged side effects, whether the ALJ adequately considered the evidence of record regarding the alleged severity and frequency of Plaintiff's tremors. The undersigned, therefore, recommends that this action be REMANDED for further development of the record regarding the issue of Plaintiff's alleged tremors.

As discussed above, the ALJ properly considered, and discounted, Plaintiff's alleged headaches, and substantial evidence in the record supports this determination. The ALJ's silence on Plaintiff's alleged nausea and tremors requires remand, as the undersigned cannot determine whether the ALJ considered and discounted those ailments for reasons supported in the record, or whether the ALJ simply failed to consider them. Accordingly, the undersigned recommends that this action be REMANDED for further development of the record with regard to the severity, frequency, and work-related effects of Plaintiff's nausea and tremors.

### 3.  Evaluation of the Opinion of Consultative Examiner Eugene Smith

Plaintiff contends that the ALJ erred in finding that Plaintiff's mental residual functional capacity ("RFC") enables him to work. Docket No. 16. Specifically, Plaintiff argues, "[a]lthough the ALJ finds that his mental RFC finding is based on the report of Eugene Smith, the ALJ only partially adopts the opinion of Mr. Smith." *Id.* at 17. Plaintiff maintains that, "Mr. Smith's restrictions support a finding that [Plaintiff] cannot sustain work on a regular and continuing basis," and that the VE testified that "if Mr. Smith's findings were accepted,

[Plaintiff] could not work." *Id.* at 18.

Defendant responds that the ALJ reasonably interpreted Mr. Smith's opinion in making his mental RFC determination regarding Plaintiff. Docket No. 17. Specifically, Defendant argues that "Plaintiff appears to have interpreted Mr. Smith's opinion as being much more limiting than, in fact, it was." *Id.* Defendant contends that Mr. Smith determined Plaintiff was generally able to focus his attention adequately, and had difficulty in interacting with others only *at times*. *Id.* Defendant also argues that the ALJ's RFC finding was consistent with Dr. Phay's psychological opinion, as well as with other substantial evidence of record. *Id.*

As an initial matter, although Plaintiff contends that, "Mr. Smith's restrictions support a finding that [Plaintiff] cannot sustain work on a regular and continuing basis," Mr. Smith actually opined in relevant part as follows:

> ABILITY TO DO WORK-RELATED ACTIVITY:
>
> This individual suffers from depression and anxiety. At times, this would cause him difficulty in interacting in an emotionally stable fashion with supervisor, peer, and public alike. Otherwise, he is able to focus his attention adequately. He is able to complete several-step task duties. He has the ability at a psychological level to sustain and maintain across a usual workday.

TR 410-11. As can be seen, Mr. Smith's opinion in no way supports Plaintiff's contention.

Recounting the contents of Mr. Smith's report, the ALJ stated:

> The claimant told Dr. Smith that he didn't "do nothing much." He said, "Most days, I sleep pretty late. Gets up and watch television, plays computer games and sometimes, chat online in chat rooms. He eats something takes a nap, gets up, watches TV, takes medicine, and goes to bed." Dr. Smith opined the claimant was independent in all self-help hygiene needs as far as feeding, clothing, and bathing himself. He was not independent in travel as he is restricted from driving because of his epilepsy. He was independent in making decisions about shopping and buying

> things. Dr. Smith observed that the claimant's immediate, recent,
> and remote memory all were intact. He was oriented to time, place,
> person and circumstance. There was no thought process disorders
> as his thoughts were logical, sequential, and there was no
> tangential thinking. His thought content was highly circumstantial
> to his seizure condition, financial distress (Exhibit 6F).
>
> . . .
>
> . . . Even though the claimant is symptomatic at times the
> claimant's residual functional capacity is supported by the
> consultative evaluation completed by Eugene Smith, M.A. on
> April 11, 2008. Dr. Smith opined that the claimant suffers from
> depression and anxiety. At times, this would cause him difficulty
> in interacting in an emotionally stable fashion with supervisor,
> peer, and public alike. Otherwise, he is able to focus his attention
> adequately. He is able to complete several-step task duties. He has
> the ability at a psychological level to sustain and maintain across a
> usual workday. Dr. Smith gave diagnoses of major depression,
> recurrent without psychotic features and anxiety disorder with
> panic attacks (Exhibit 6F).

TR 30-32, *referencing* 407-11.

As the above indicates, the ALJ properly considered Mr. Smith's evaluation in reaching

his RFC conclusion.

Summarizing the evidence upon which he based his RFC determination of Plaintiff, the

ALJ explained:

> In sum, the above residual functional capacity assessment is
> supported by the medical evidence of record [and] shows
> essentially normal exams except the claimant has a history of
> seizures, major depression, recurrent without psychotic features
> and anxiety disorder with panic attacks. Dr. Gregory's opinion is
> supported from the evidence of facts and he opined the claimant
> retained the ability to perform all exertional levels of work
> (Exhibit 7F). Andrew J. Phay, Ph.D. opined the claimant is able to
> remember locations and work like procedures and perform,
> understand, remember simple and detailed tasks; is able to
> maintain concentration, perform routine daily activities and
> complete a normal work week with acceptable performance and
> productivity; is able to sustain an ordinary work routine around

others and make acceptable simple work-related decisions (Exhibit 14F). Dr. Smith opined that the claimant is able to focus his attention which was adequate, was able to complete several-step task duties and has the ability at a psychological level to sustain and maintain across a usual workday (Exhibit 6F). Because the opinions of the physicians are supported by the longitudinal medical evidence and are consistent with the medical facts and findings, the undersigned gives significant weight to the physician's opinions with regard to the claimant's ability to perform at all extertional levels of activity with non-exertional limitations (SSR 96-6p).

TR 33, *referencing* TR 407-11, 412-19, 479-82.

As can be seen, the ALJ assessed the medical records and reached a reasoned decision; the ALJ's interpretation of Mr. Smith's opinion was proper and supported by substantial evidence. Accordingly, Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be GRANTED IN PART, and that this action be REMANDED with instructions to further develop the record with regard to the severity, frequency, and work-related effects of Plaintiff's nausea and tremors

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. CLIFTON KNOWLES
United States Magistrate Judge